ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LAMONT AUSTIN,                     )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        )          Case No. 07-2380-JAR
                                   )
JOSTENS, INC.,                     )
                                   )
                    Defendant.     )
_____)

## MEMORANDUM AND ORDER

Plaintiff Lamont Austin alleges claims under the Family and Medical Leave Act

("FMLA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), against his

former employer, defendant Jostens, Inc. ("Jostens").  Plaintiff asserts both interference and

retaliation claims under 29 U.S.C. § 2615(a)(1) and (2).  The Court now considers defendant

Josten's Motion for Summary Judgment on all remaining claims (Doc. 29).  The motion is fully

briefed and the Court is prepared to rule.[1]  For the reasons explained in detail below, the Court

grants in part and denies in part the motion for summary judgment.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[2]

---

[1]The Court does not consider plaintiff's proposed surreply, attached to his Motion for Leave to File
Surreply (Doc. 38).  While the Court granted plaintiff's motion for leave, he did not file the document within ten
days of the court's order granting the motion.  *See* D. Kan. R. 15.1 ("If the court grants the motion, the moving party
shall file and serve the pleading within 10 days of the court's order granting the motion.").

[2]Fed. R. Civ. P. 56(c).

In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[3]*Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[6]*Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[8]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] "The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[15]

## II.    Statement of Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to plaintiff.  Plaintiff Lamont Austin is a former employee of defendant Jostens, which is in the business of printing school yearbooks.  Defendant hired plaintiff in March 1994 as a press operator.  Plaintiff belonged to the Graphic Communications Union Local 49C ("the

---

[10]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671).

[11]*Adams,* 233 F.3d at 1246.

[12]*Id.*

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[15]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Union") while employed by defendant and the terms and conditions of his employment were governed by a collective-bargaining agreement between defendant and the Union.  The collective-bargaining agreement prohibits employees from being absent for five consecutive working days without obtaining an approved leave.  Under Article VI, section 6.5 of that agreement, an employee who is absent for five consecutive working days without obtaining an approved leave forfeits all seniority rights.

***Prior FMLA Leave Requests***

In August 2002, plaintiff requested FMLA leave for a serious health condition.  He provided an adequate medical certification that was signed by plaintiff's physician, Dr. Ivan Ketter; however, it did not specifically state when or if Dr. Ketter had examined plaintiff. Defendant granted plaintiff's request for FMLA leave in August 2002.  In January 2003, plaintiff requested FMLA leave for a serious health condition and provided an adequate medical certification signed by Dr. Ketter.  Again, it did not specifically state when or if Dr. Ketter examined plaintiff.  Under the section of the certification about whether a regimen of continuing treatment is required, it states "follow up appt."  Defendant granted plaintiff's request for this leave.

In August 2004, plaintiff requested FMLA leave for a serious health condition and defendant requested that plaintiff return a medical certification by September 2, 2004.  Plaintiff asked for and received an extension until September 7, 2004.  Defendant did not receive the certification by September 7, 2004, so plaintiff's request for leave was denied.  Because plaintiff was denied approved leave, his employment was terminated pursuant to § 6.5 of the collective-bargaining agreement.  On September 17, 2004, defendant rehired plaintiff and the parties

4

executed a "last chance agreement."  Under this agreement, plaintiff acknowledged that he was terminated on September 7, 2004 for "being absent for more than five days without approved leave and violating the Company's FMLA policy."  It further states that "the Company has offered to rehire [plaintiff] as a press operator if the following conditions are met and maintained: . . . there cannot be any violation of Company policy during the length of this agreement.  This would include, but not be limited to, attendance, conduct, and safety policies." Finally, plaintiff acknowledged in the agreement:

> If I fail to achieve the above stated conditions, I will subject myself to irrevocable termination not subject to the grievance procedure. I understand Jostens is the unreviewable authority to make that determination. I understand this agreement will remain in effect for two years, beginning with the date of my signature on this agreement.

Plaintiff understood that he must abide by the terms of this agreement in order to remain employed by defendant.

### July 2005 FMLA Leave Request

Plaintiff was absent from work beginning July 18, 2005.  Angie Smith, Employee Relations Supervisor, was the person at Jostens responsible for approving FMLA leave requests. One of Smith's responsibilities was to send an employee FMLA paperwork upon learning that the employee had missed three consecutive work days.  On July 20, 2005, she provided plaintiff with FMLA paperwork.  The cover memorandum to this paperwork read: "Failure to return the proper documentation by the due date could result in disciplinary action up to and including termination."

Plaintiff applied for FMLA leave on July 20, 2005 and defendant provisionally approved

the request pending his submission of medical certification.  Defendant notified plaintiff on July

20, 2005 that he was required to furnish a medical certification form by August 4, 2005.[16]

Plaintiff was aware that defendant expected him to obtain medical certification and, based on his

prior experience with requesting FMLA leave, he understood defendant's specific requirements

with respect to the prescribed medical treatment that was necessary to obtain approved leave.

On July 21, 2005, Dr. Ketter filled out the medical certification form that defendant had

provided.   On the form, Dr. Ketter checked boxes indicating that plaintiff's condition qualified

as a "serious health condition" under the FMLA under category 2.  Category 2 applies when the

patient's serious health condition qualifies as  "Absence Plus Treatment."  "Absence Plus

Treatment" is defined on the attached sheet to the certification form as:

> A) A period of Incapacity of more than three consecutive calendar
> days (Including any subsequent treatment of period of incapacity
> relating to the same condition), that also involves:
>
> > 1) Treatment two or more times by a health care provider,
> > by a nurse or physician's assistant under direct supervision
> > of a health care provider, or by a provider of health care
> > services (e.g., physical therapist) under orders of, or on
> > referral by, a health care provider; or
> >
> > 2) Treatment by a health care provider on at least one
> > occasion which results in a regimen of continuing treatment
> > under the supervision of the health care provider.[17]

The terms "incapacity" and "treatment" are defined in footnotes to this definition.  Dr. Ketter

described plaintiff's medical "facts" that support his certification as "severe low back pain" that

commenced on approximately July 16, 2005, with a probable duration of one week.  The form

---

[16]Defendant cites to specific language on the second page of this notification, however, this page was not attached as an exhibit.  (*See* Doc. 30, Ex. 9.)

[17](Doc. 34, Attach. 8 at 4.)

asks that if additional treatments will be required for the condition, to provide the probable number of such treatments.  Dr. Ketter left this question blank.  The form asks in question number 3 that if a regimen of continuing treatment is required, to provide a general description of such regimen.  Dr. Ketter wrote "low back exercising."  Dr. Ketter did not list any other form of treatment or medicine for plaintiff on the form.

Plaintiff's FMLA request was denied on July 29, 2005 because Angie Smith and Lisa Triplett, Jostens' benefits manager, considered the medical certification inadequate.  Smith typically consulted with Triplett about decisions to approve or deny FMLA leave.  Smith and Triplett decided the medical certification was inadequate because it did not indicate how many times plaintiff had been seen by a medical provider and the only continuing treatment listed was low back exercise, which did not support the need for leave.

Defendant issued a form response to plaintiff's leave request on July 29, 2005 with the box for "Denial notice" checked.  The box was checked next to the following: "You are not eligible for leave under FMLA for the following reason(s): Your medical certification does not meet the requirements in order to support the leave."  The denial notice did not provide a specific reason why the certification did not support the leave request.  Plaintiff received this denial notice sometime around August 1.

On August 1, 2005, defendant provided plaintiff with paperwork to file a short-term disability claim.  Plaintiff decided not to file for short-term disability because he did not think that the compensation he would receive would be worth it.  That same day, plaintiff saw Dr. Ketter again because he was having difficulty working and because he sought certification for a few additional days of leave.  Plaintiff told Dr. Ketter that the certification required additional

information so that he could be off work.  Dr. Ketter revised the July 21, 2005 certification form and indicated that plaintiff's back pain lasted for two weeks and that plaintiff could return to work on August 1.

Smith received the revised certification form on August 3, 2005 and discussed it with Triplett.  They determined that the certification still did not support the need for leave because it did not mention that plaintiff had been examined by a physician one or two times, nor did it indicate a continuing regimen of treatment that would qualify plaintiff for leave.  Smith allowed plaintiff a couple of more weeks to file his short-term disability claim, which he did not file.

**Plaintiff's Termination**

On August 17, 2005, defendant terminated plaintiff's employment by letter, addressed and mailed to plaintiff at an address on "SE Truman."  The letter states that plaintiff was terminated pursuant to Article VI, section 6.5 of the collective-bargaining agreement for an absence of five consecutive working days without obtaining an approved leave.  Plaintiff acknowledges that the last chance agreement was in effect when he was terminated.  Following his termination, plaintiff filed a grievance with the Union seeking job reinstatement.  His Union steward, Roger Sanders, filled out the grievance form on plaintiff's behalf.  The Topeka Plant Manager, Robert Spayd, found that the collective-bargaining agreement was not violated and he upheld plaintiff's termination under Article VI, section 6.5.

After an employee is terminated, it is defendant's standard procedure to notify Acclaim Benefits, a third-party, so that it will mail the employee their COBRA election notice to the last known address on file.  Defendant maintains a log entitled "COBRA Confirmation of Processed QB Data Forms," which indicates when an employee's COBRA election notice was mailed.  On

August 26, 2005, Acclaim Benefits mailed plaintiff's COBRA election notice to him at his

address on "SE Turman" in Topeka.  Plaintiff had previously submitted Employee Applications

that listed his address on "SE Turman."   Plaintiff also testified in his deposition that this was his

address.  He admits that it is possible that he received the COBRA notice, but he does not recall

receiving it.

***January 2007 Job Application***

In January 2007, Sanders and Dave Wonder, a former co-worker of plaintiff's, talked to

Smith about the possibility of plaintiff reapplying for a job as a press operator.  Sanders and

Smith also spoke to Mike Main, the press room general supervisor.  Main does not make hiring

decisions.  Smith told them that she did not have any objections to plaintiff reapplying.  On

January 17, 2007, a paralegal who works for plaintiff's current counsel in this case, sent a letter

to defendant's human resources department.  The letter stated in part:

> This office has been asked to review the events surrounding the
> termination of Lamont Austin on or about August 25, 2005.  By
> way of this letter, and attached release forms, signed by Mr.
> Austin, I am requesting copies of his entire personnel file,
> including but not limited to documents relating to disability,
> medical records, leave of absence, FMLA, union negotiations or
> hearings, any notes taken at any meetings held where Mr. Austin
> was the topic of discussion, call logs, as well as performance
> reviews.[18]

Smith received this letter and understood that the letter was a request for plaintiff's employment

file and that he may be thinking of filing a lawsuit against defendant.

Prior to filling out an application with defendant, plaintiff spoke to Main on the telephone

---

[18](Doc. 30, Ex. 20.)

and on January 26, 2007, plaintiff applied for a press operator or a press helper position with

defendant.  Sanders and Wonder spoke to Smith again about rehiring plaintiff.  Smith told them

that plaintiff had filed or was going to file a lawsuit against the company and that the company

did not know if it was going to rehire plaintiff.  Smith testified that the application was not

considered for either position because there were no open jobs posted or available at that time.

But Smith told plaintiff that his application would be considered until June 30, 2007 for any

positions that opened up.  Smith testified that plaintiff was not considered for rehire because

there was an informal company policy that it would not consider terminated employees for rehire

for a period of five years after termination and because plaintiff was terminated under a last-

chance agreement.  Two former employees have been rehired within five years of a termination

in the past—Marcelino Gonzalez and Mr. Berweart.  Neither Smith nor Spayd can recall any

person who had been rehired by defendant after being terminated for violating a last chance

agreement.

## III.   Discussion

### A.    FMLA Claims

The FMLA entitles a qualified employee to up to twelve weeks of leave during any

twelve month period "[b]ecause of a serious health condition that makes the employee unable to

perform the functions of the position of such employee."[19]  In addition to the leave, an eligible

employee is entitled to be restored to the same or an equivalent position upon return from

leave.[20]  Plaintiff asserts his FMLA claims under two theories: (1) interference under §

---

[19]29 U.S.C. § 2612(a)(1)(D).

[20]*Id.* § 2614(a)(1)(A)-(B).

10

2615(a)(1), and (2) retaliation under § 2615(a)(2).  The Court discusses each in turn.

### 1.    Interference

Under the interference theory, if an employer interferes with an employee's FMLA-created right to a medical leave, it has violated the FMLA, regardless of its intent.[21]  In such a case, the employee must demonstrate his entitlement to the disputed leave by a preponderance of the evidence.[22]  Defendant argues that plaintiff can point to no evidence that he was entitled to FMLA leave.

A "serious health condition" under the FMLA is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care . . . ; or (B) continuing treatment by a health care provider."[23]  There are various categories of "continuing treatment by a healthcare provider" under the pertinent regulations.[24]  Such continuing treatment includes an illness or impairment resulting in more than three days of incapacity, requiring treatment at least two times by a healthcare provider, or treatment by a healthcare provider on at least one occasion which results in "a regimen of continuing treatment under the supervision of the healthcare provider."[25]

---

[21]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[22]*Id.*; *see Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).  A prima facie case of interference requires a showing that: (1) plaintiff was entitled to FMLA leave; (2) that an adverse action by the employer interfered with plaintiff's right to take FMLA leave; and (3) that the employer's adverse action was related to the exercise or attempted exercise of plaintiff's FMLA rights.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).  If plaintiff has shown the first two elements of interference, the burden shifts to the employer to prove the third element.  *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

[23]29 U.S.C. § 2611(11).

[24]*See* 29 C.F.R. § 825.114(a)(2).

[25]*Id.* § 825.114(a)(2)(I).

The FMLA provides that "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee,"[26] and that "the employee shall provide, in a timely manner, a copy of such certification to the employer."[27]  Specifically, the Department of Labor regulations explain that "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts."[28]  "If the employee never produces the certification, the leave is not FMLA leave."[29]  If an employer requests such documentation, it is required to notify the employee of the consequences for failing to provide an adequate certification.[30]

A medical certification is considered sufficient if states the date on which the serious health condition commenced; the probable duration of the condition; the appropriate medical facts within the knowledge of the health care provider regarding the condition; and a statement that the employee is unable to perform the functions of the position of the employee, if the leave is for the employee's own health condition.[31]  A medical certification is presumptively valid if it contains the required information and is signed by the health care provider.[32]  However, "the

---

[26] 29 U.S.C. § 2613(a).

[27] *Id.*

[28] 29 C.F.R. § 825.305(b) (2003).

[29] *Id.* § 825.311(b).

[30] *Id.* § 825.301(b)(1)(ii).

[31] 29 U.S.C. § 2613(b).

[32] *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 578 (6th Cir. 2007).

employer may overcome this presumption by showing that 'the certification is invalid or inauthentic.'"[33]  If the employer finds that the certification form is incomplete, it must advise the employee of the deficiency and provide him or her a reasonable opportunity to cure the deficiency.[34]

Defendant first argues that the medical certification submitted by plaintiff was insufficient because it did not provide defendant with the medical facts demonstrating that plaintiff had a serious health condition.  The medical certification that Dr. Ketter completed on July 21, 2005, and the supplemental certification he signed on August 1, 2005, contained all of the information required by 29 U.S.C. § 2613.  They both state that the condition began on July 16, 2005 and had a probable duration of one week, two weeks on the second form.  Dr. Ketter provided medical facts within his knowledge about plaintiff's condition—that it was severe low back pain— and verified that plaintiff was unable to perform the functions of his position.[35]  Therefore, the Court applies the presumption that the certification is valid.

Dr. Ketter checked that plaintiff had a serious health condition under Category 2 on the certification form.  Category 2 is described on the form as "Absence Plus Treatment."  "Absence Plus Treatment" is defined on the form as a period of incapacity of more than three days, requiring either treatment at least two times by a healthcare provider, or treatment by a healthcare provider on at least one occasion which results in "a regimen of continuing treatment

---

[33]*Id.* (quoting *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 955–56 (S.D.Ohio 2005)).

[34]29 C.F.R. § 825.301(d).

[35]*See Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 886 (7th Cir. 2005) (finding certification sufficient that contained no duration and where doctor wrote "bronchitis" next to the box for "incapacity of more than three (3) days due to a serious health condition" even though he did not actually check the box).

under the supervision of the health care provider."[36]  The form does not require the health care

provider to indicate which of these bases apply.[37]

Defendant argues that there is no indication on the certification form that the treatment by

Dr. Ketter resulted in a "regimen of continuing treatment under the supervision of [Dr. Ketter]"

because exercise "is not, by itself, sufficient to constitute a regimen of continuing treatment for

purposes of FMLA leave" pursuant to the regulations.[38]  Indeed, the form itself states that a

regimen of continuing treatment does not include exercise that can be initiated without a visit to

a health care provider.[39]  If this was the only basis for plaintiff's FMLA request, there would be

no genuine issue of material fact that plaintiff did not suffer from a serious health condition.  The

plain language of the regulation belies plaintiff's argument that it matters whether the exercise

was "prescribed" by Dr. Ketter.  There is no evidence in the record suggesting the exercise could

not be initiated without a visit to Dr. Ketter.

But even if the treatment prescribed by Dr. Ketter did not constitute a "regimen of

treatment," it does not end the inquiry.  Plaintiff also could have a serious health condition if he

was treated at least two time by a health care provider.  Defendant argues that the certification

does not establish a continuing treatment involving treatment by a health care provider at least

---

[36]*See id.* § 825.114(a)(2)(I); (Doc. 34, Attach. 8 at JOSTENS00169).

[37]*See Miller v. AT&T Corp.*, 250 F.3d 820, 836 (4th Cir. 2001) ("The FMLA allows employers to require information regarding the 'medical facts' supporting a health care provider's conclusion that the employee suffered from a serious health condition.  The salient point, however, is that AT&T elected not to require such information on its certification form."); *see also Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1149 (8th Cir. 2001).

[38]*Id.* § 825.114(b).

[39](Doc. 34, Attach. 8 at JOSTENS00169 n.4.)

two times because there is no indication that plaintiff was treated more than once.[40]  Defendant

suggests it would have reached a different conclusion had Dr. Ketter indicated on the

certification form that plaintiff was treated two or more times by answering Item C1 on the form:

"If additional treatments will be required for the condition, provide an estimate of the probable

number of such treatments."  But that question does not direct an answer to the threshold

question—whether plaintiff was treated two or more times in accordance with the regulation.  It

may be the case that Dr. Ketter treated plaintiff two or more times but that additional treatments

would not be required.  Therefore, the failure to answer Item C1 on the form is not an

appropriate basis to deny plaintiff's FMLA leave.

Moreover, the certification form here is not analogous to the certification form in *Novak*

*v. MetroHealth Medical Center*, on which defendant relies.[41]  There, the court found defendant

had satisfied its burden of showing the certification was unreliable because the first certification

omitted three of the four statutory requirements and the second certification was completed by

the medical provider's assistant and was not authorized by the medical provider.[42]  Here, while

the certification is not detailed, it does provide the requisite information, compared to the initial

certification in *Novak*.  Further, there is no allegation here that Dr. Ketter's certification was

unreliable, only that it was insufficient to establish plaintiff experienced a serious health

condition under the FMLA.

"Treatment" under 29 C.F.R. § 825.114(a)(2)(i)(A) includes "examinations to determine

---

[40]29 C.F.R. § 825.114(a)(2)(i)(A).

[41]503 F.3d 572, 578–79 (6th Cir. 2007).

[42]*Id.*

if a serious health condition exists and evaluations of the condition."[43]  "[T]he fact that an employee is sufficiently ill to see a physician two times in a period of just a few days is all that FMLA requires for continuing treatment."[44]  Plaintiff urges that he was treated twice by Dr. Ketter for his lower back pain—once on July 21, 2005 and a second time on August 1, 2005.  Dr. Ketter's progress notes support this fact.  On the first visit, he examined plaintiff based on his complaints of lower back pain; "Pain was at a 9/10 a couple of days ago with muscle spasm."  Dr. Ketter noted that plaintiff's pain was improving but that he should follow-up if the pain did not continue to improve.  Dr. Ketter examined plaintiff again on August 1, because plaintiff contacted Dr. Ketter on July 27 about changing the date on his FMLA form so that he could have three or four more days off work.  Plaintiff relayed at the August 1 appointment that his back "popped while taking shower 7/25/05."  Plaintiff asked for a release to return to work at that appointment and at that time, Dr. Ketter revised the FMLA form by changing the probable duration to two weeks.

Defendant suggests that plaintiff's progress notes are immaterial because it made the decision to deny plaintiff's FMLA leave on the basis of the certifications alone.  But this is not the only evidence in the record that the Court can evaluate to determine if plaintiff had a serious health condition entitling him to FMLA leave.[45]  The Court directs defendant to 29 C.F.R. § 825.307, which provides for a second opinion procedure if the employer questions the adequacy

---

[43]29 C.F.R. § 825.114(b).

[44]*Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1323 (10th Cir. 2005) (quotation omitted).

[45]*See Peterson v. Exide Corp.*, 123 F. Supp. 2d 1265, 1270–71 (D. Kan. 2000) (finding employer was not bound by certification when it possessed contrary medical evidence that plaintiff did not have a serious health condition).

of a medical certification.[46]  While a majority of courts to consider the question have found that an employer does not have an affirmative duty to engage in this procedure,[47] the Seventh Circuit has explained that "an employer who bypasses this step risks denying FMLA leave to an employee who is entitled to the leave, rendering the employer liable for lost wages, benefits, interest, attorney's fees, costs and other damages as provided by 29 U.S.C. § 2617."[48]  Here, a reasonable jury could find (1) that the certification was sufficient to establish that plaintiff was treated two or more times by a health care provider because Dr. Ketter checked that plaintiff had a serious health condition under Category 2 on the form; and (2) that plaintiff had a serious health condition based on Dr. Ketter's progress notes showing that he was treated at least two times by a health care provider.

Defendant insists in its motion that the certification was inadequate to show that plaintiff had a serious health condition, not that it was merely incomplete.  When an employer finds a certification incomplete, it has a duty to advise the employee of that fact and provide him with a reasonable opportunity to cure the deficiency in the certification.[49]  Some courts have equated the term "incomplete" in the regulation with "inadequate."[50]  Here, while there is no dispute that defendant notified plaintiff that the certification was incomplete, and provided him with a period

---

[46]*See also* 29 U.S.C. § 2613(c).

[47]*See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007); *Rhoads v. FDIC*, 257 F.3d 373, 386 (4th Cir. 2001); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000).  *But see Sims v. Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253, 1262 (N.D. Cal. 1998) (defendant "had the opportunity to challenge the medical certification provided by Sims by requiring him to obtain, at its expense, one or two more medical opinions.  It did not do so.  It is thus bound by the initial certification Sims submitted.").

[48]*Darst v. Interstate Brands Corp.*, 512 F.3d 903, 911 (7th Cir. 2008).

[49]29 C.F.R. § 825.305(d); *see Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005).

[50]*Sorrell*, 395 F.3d at 338 (collecting cases); *see also Novak*, 503 F.3d at 579.

of time to cure the deficiency, there is a genuine issue of material fact about whether it provided a "reasonable opportunity to cure." Plaintiff testified that he was never made aware of the specific deficiency in the July 21 certification.

Smith testified that she "would have" had a conversation with plaintiff about the specific reasons it was deficient. The notice sent to plaintiff merely says that the certification "does not meet the requirements in order to support the leave." It does not inform plaintiff whether it was because the form was incomplete, or simply inadequate. The August 1 re-certification form, when viewed in the light most favorable to plaintiff, supports plaintiff's argument that he was unaware of the reason why the certification was considered incomplete or inadequate. Dr. Ketter only changed the date and duration of the serious health condition, he did not expand on the medical facts, or complete the question about whether additional treatments would be necessary. Thus, the Court concludes that a reasonable jury could conclude that plaintiff did not receive a "reasonable" opportunity to cure the deficiency because he was never informed of the specific problem with the original certification.[51]

In sum, the Court finds that plaintiff has come forward with evidence that creates a genuine issue of material fact about whether he was entitled to FMLA leave. A reasonable jury could find he had a serious health condition based on Dr. Ketter's progress notes and the August 1, 2005 certification form that indicates, when viewed in the light most favorable to plaintiff, that plaintiff was treated on both July 21, 2005 and August 1, 2005 by Dr. Ketter for his lower back

---

[51]*See Novak*, 503 F.3d at 579 (finding employer provided reasonable opportunity to cure by holding a meeting with the employee, explaining the deficiency and allowing the plaintiff an additional week to obtain other certifications).

pain.[52]  A reasonable jury could also find that defendant failed to provide plaintiff with a reasonable opportunity to cure the July 21 certification.  Therefore, summary judgment is inappropriate on the interference claim.

### 2.      Retaliation

Plaintiff contends that he suffered unlawful retaliation when he was not rehired by defendant.  Retaliation claims under the FMLA based on circumstantial evidence are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[53]  Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation.[54]  If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action.[55]  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.[56]

In a Title VII retaliation case, a plaintiff can alternatively show that retaliation played a part in the employment decision under a "mixed-motive" theory.[57]  A mixed-motive analysis applies only in cases where the decision "was the product of a mixture of legitimate and

---

[52]*See Peterson v. Exide Corp.*, 123 F. Supp. 2d 1265, 1271 (D. Kan. 2000) (finding plaintiff failed to establish as a matter of law that he had a serious health condition when certification was "wholly insufficient" and there was evidence that he was never incapacitated for more than three consecutive days and that defendant was aware of medical facts that were directly contrary to the doctor's post-termination certification).

[53]*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[54]*Id.*

[55]*Id.*

[56]*Id.*; *see also Gunnell v. Utah State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (explaining that plaintiff has the ultimate burden of demonstrating that the challenged employment decision was the result of intentional retaliation).

[57]*Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

illegitimate motives,"[58] and therefore does not implicate the burden-shifting analysis described in *McDonnell Douglas*.  Once the plaintiff shows that retaliatory animus was a motivating factor in the employment decision, the burden of persuasion shifts to defendant to show that it would have taken the same action absent retaliatory motive.[59]   In *Desert Palace, Inc. v. Costa*,[60] the Supreme Court clarified that a plaintiff was not required to present direct evidence of discrimination, but could proceed on a mixed-motive theory with only circumstantial evidence.   Judge Vratil has applied a mixed-motive theory in a FMLA retaliation case, citing the unpublished Tenth Circuit decision of *Tujillo-Cummings v. Public Service Co. of New Mexico*.[61]

Defendant moves for summary judgment on the retaliation claim, arguing: (1) plaintiff cannot establish a prima facie case of discrimination because the letter from counsel's paralegal does not constitute "protected activity"; (2) plaintiff is not an "eligible employee" for purposes of this claim because the alleged protected activity did not occur when he was employed; and (3) plaintiff is unable to show pretext under *McDonnell Douglas* because he was terminated under the last chance agreement and because there is no evidence of similarly-situated individuals who were rehired after being terminated under a last chance agreement.  Plaintiff argues that he is an "eligible employee" under the FMLA, despite the fact that he was not employed at the time he engaged in the alleged protected activity.  Further, he claims that by hiring an attorney to

---

[58]*Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989).

[59]*Fye*, 516 F.3d at 1225.

[60]539 U.S. 90, 101 (2003).

[61]*Burnett v. S.W. Bell Tele., L.P.*, 471 F. Supp. 2d 1121, 1138–39 (D. Kan. 2007) (citing No. 97-2337, 1999 WL 169336, at *5 (10th Cir. Mar. 29, 1999)).  The court in *Tujillo-Cummings* considered and rejected the plaintiff's mixed motive theory in a two-sentence paragraph.  1999 WL 169336, at *5.

investigate his termination, he opposed an unlawful practice under the FMLA.  Plaintiff contends

that he need not show causation or pretext because he is asserting a mixed-motive theory of

retaliation. The Court first addresses the threshold question of whether plaintiff is an "eligible

employee" for purposes of his retaliation claim.

> **a.       "Eligible Employee"**

Defendant urges that plaintiff is not an "eligible employee" because when plaintiff

engaged in the allegedly protected activity, he had already been terminated.  The statute limits a

private right of action under the FMLA to "eligible employees."[62]  But the FMLA delegates to

the Secretary of Labor the authority to "prescribe such regulations as are necessary to carry out"

the Act.[63]  Under the regulations, "[i]ndividuals, and not merely employees, are protected from

retaliation for opposing (e.g., file a complaint about) any practice which is unlawful under the

Act.  They are similarly protected if they opposed any practice which they reasonably believe to

be a violation of the Act or regulations."[64]  Moreover "employers cannot use the taking of FMLA

leave as a negative factor in employment actions, such as hiring, . . ."[65]

The First and Eleventh Circuits have held that the term "employees" in the FMLA is

ambiguous and thus, the Secretary's regulations extending the Act's protection to prospective

and former employees are entitled to deference under the test enunciated in *Chevron v. Natural*

---

[62]29 U.S.C. § 2617(a)(1).

[63]*Id.* § 2654.

[64]29 C.F.R. § 825.220(e).

[65]*Id.*  § 825.220(c).

*Resources Defense Council.*[66]  Finding no contrary Tenth Circuit authority, the Court follows

these courts and affords 29 C.F.R. § 825.220 deference.[67]  "[A] former employee who has

applied for reemployment, is an 'employee' under the FMLA.  If [plaintiff] proves that his past

use of FMLA leave was a motivating factor in [defendant's] refusal to rehire him, this is

precisely the type of discrimination that the FMLA seeks to prohibit."[68]

> ### b.    Protected Activity

To state a prima facie case of retaliation, plaintiff must show that: (1) he engaged in a

protected activity; (2) defendant took an action that a reasonable employee would have found

materially adverse; and (3) there exists a causal connection between the protected activity and

the adverse action.[69]  Defendant argues that plaintiff can point to no evidence that he engaged in

a protected activity.  Plaintiff responds that he engaged in protected opposition when he hired an

attorney to investigate his termination.

Protected activity, or opposition activity, is "an informal or formal complaint about, or

other opposition to, an employer's practice or act . . . if the employee reasonably believes such

---

[66]467 U.S. 837 (1984); *see Smith v. Bellsouth Telecomm., Inc.*, 273 F.3d 1303, 1313 (11th Cir. 2001); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 9 (1st Cir. 1998).

[67]Defendant urges the Court to follow the District Court of Maryland, which found that "the statutory language implicitly limits the scope of any violation to interactions between individuals sharing an employer-employee relationship at the time of the alleged violation." *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 892 (D. Md. 1996).  As the Eleventh Circuit explained in *Smith*, that case involved a plaintiff who attempted to avoid the FMLA's statute of limitations by continuing to deny her comparable jobs after she stopped working for the defendant.  *Smith*, 273 F.3d at 1313.  As the court found in *Smith*, the *Duckworth* court's rationale is "more persuasive and more applicable to the issue at hand."  *Id.*

[68]*Smith*, 273 F.3d at 1314; *cf. Hill v. Underwood Mem. Hosp.*, 365 F. Supp. 2d 602, 611 (D.N.J.. 2005) (considering failure to rehire retaliation claim under the FMLA).

[69]*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006)  (citation omitted).

an act to be in violation of the statute in question."[70]  Plaintiff states in his response brief that his

protected activity occurred "when he hired an attorney to investigate whether his termination in

August of 2005 violated the FMLA."[71]  Plaintiff then points to the January 17, 2007 letter that

his counsel's paralegal sent to defendant, stating that "[t]his office has been asked to review the

events surrounding the termination of Lamont Austin on or about August 25, 2005."  But it

cannot be disputed that this letter does not complain of any practice that plaintiff reasonably

believed was in violation of the FMLA.  The letter does not allege that plaintiff was wrongfully

terminated, even in a general manner.

   Plaintiff points the Court to an unpublished Title VII opinion by Judge Rogers to support

his contention that hiring an attorney is protected activity in employment discrimination cases.[72]

But *Owens* does not stand for the proposition that merely hiring an attorney is protected activity.

The *Owens* court discussed whether a plaintiff's "opposition" under Title VII that is not

connected with the Title VII grievance procedure constitutes protected activity.[73]  After finding

that a such an interpretation is overly restrictive, the court explained:

> We believe the contours of § 704(a) protection must be
> evaluated in the light of the facts of each case.  There is a
> necessarily hazy line between good-faith attempts to rectify
> problems and better one's lot, and activities calculated to incite
> disruption and discord without accomplishing the beneficial aims
> of Title VII.

---

[70]*Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir. 2002).

[71](Doc. 33 at 24.)

[72]*Owens v. Rush*, No. 76-32-C5, 1979 WL 15393 (D. Kan. Feb. 6, 1979), *rev'd on other grounds*, 636 F.2d 283 (10th Cir. 1980).

[73]*Id.*

> Plaintiff's activities in the days prior to her discharge border closely upon that "hazy line" we have envisioned.  The January 20 letter, and the subsequent threats to sue, had a devastating effect upon the conduct of other employees and Sheriff Rush.  On the other hand, we cannot doubt plaintiff's sincerity in feeling inadequately appreciated and compensated.  While her tactics were heavy-handed in the extreme, the fact remains that her good faith assertion of perceived rights led in part to her discharge by an angry Rush.  Most telling in this regard is Rush's rather extreme reaction to plaintiff's mere act of visiting an attorney to discuss her grievances. Rush traveled a considerable distance for the sole reason of confirming plaintiff's presence at the office of an attorney. He could only have interpreted this as the signal of impending legal action; the threat of such action clearly played a large role in his decision to terminate plaintiff. We believe plaintiff's act in seeking counsel, and Rush's reaction thereto, provide a sufficient nexus with protected activity under Title VII to make the subsequent discharge cognizable under § 704.[74]

While Judge Rogers found that this plaintiff's employer's reaction to her visiting an attorney was probative, there was additional evidence of a letter and repeated threats to sue based on her belief that she had been discriminated against.  There is no evidence of similar activity by plaintiff in this case.

The Court is unable to conclude, based only on the letter from counsel's paralegal, that there is a genuine issue of material fact about whether plaintiff engaged in protected opposition under the FMLA.[75]  No reasonable factfinder could conclude that this letter, or the act of hiring an attorney, constitutes protected activity; therefore, summary judgment is appropriate on plaintiff's retaliation claim.

---

[74]*Id.*

[75]*See, e.g.*, *McCrary v. Aurora Pub. Sch.*, 57 F. App'x 362, 370 (10th Cir. 2003) (finding plaintiff's letter of rebuttal to her performance evaluation did not constitute protected opposition to age discrimination because it did not speak to age discrimination, nor did her grievance allege that she was the victim of age discrimination).

### c.     Mixed Motive Theory

Rather than respond to defendant's contention that there is no evidence of pretext, plaintiff asserts in his summary judgment response for the first time that his retaliation claim is based on a "mixed-motive" theory.[76]  The Pretrial Order characterizes his claim as retaliation that requires proof under the *McDonnell Douglas* framework.[77]  Plaintiff urges that a reasonable jury could find that a retaliatory animus played a motivating role in Smith's decision not to rehire plaintiff.  Specifically, he points to two pieces of evidence: (1) Smith's deposition testimony that she did not consider plaintiff for rehire because of an informal company policy that it would not rehire a former employee who had been terminated for five years, which was contradicted by other evidence, and (2) Sanders' testimony that the company would not rehire plaintiff because of his potential lawsuit.

The Court notes that neither piece of evidence submitted by plaintiff constitutes direct evidence of retaliation; they both require the factfinder to infer retaliatory motive.  As defendant correctly points out, although circumstantial evidence is sufficient under a mixed-motive theory, it "must be tied 'directly' to the retaliatory motive."[78]  The first piece of evidence is Smith's testimony about defendant's informal policy not to rehire an employee within five years of termination.  In her deposition, Smith testified initially that this was the reason plaintiff was not

---

[76]Plaintiff characterizes defendant's argument as one of causation on the prima facie case but cites to the portion of defendant's brief addressing the lack of evidence on pretext under the *McDonnell Douglas* analysis.

[77]*See* Pretrial Order (Doc. 28, at 11).  The mixed-motive analysis is not mentioned anywhere in the Pretrial Order.  The Pretrial Order "measures the dimensions of the lawsuit, both in the trial court and on appeal."  *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991) (quotation omitted).  But the Court is cognizant that "a plaintiff need not characterize [his] case from the outset."  *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

[78]*Fye*, 516 F.3d at 1226.

considered for rehire.  She explained later in the deposition that plaintiff was not rehired primarily because he was terminated pursuant to a last chance agreement.  Plaintiff urges that Smith's testimony about the five-year policy is contradicted by Spayd's testimony that no such policy exists and by the fact that two other employees were rehired within five years of their termination.  But while this apparent inconsistency might be probative of pretext,[79] it does not "relate to a retaliatory reason for the employer's action."[80]  This evidence does not suggest, directly or otherwise, that plaintiff's retention of an attorney was the reason why he was not rehired.

The second piece of evidence plaintiff points the Court to is Sanders' testimony that Smith told him that plaintiff had filed a lawsuit and that the company did not know if it was going to rehire plaintiff.  Sanders testified, "So I think she was probably told because he'd filed a lawsuit that she wasn't going to hire him back.  Who told her, I don't know.  I'm not privy to the information that goes on down there."[81]  Plaintiff argues that Sanders' interpretation of these comments, that defendant was not going to rehire plaintiff because of his lawsuit against it, is sufficient evidence of retaliatory motive.  The Court disagrees.  This evidence does not "directly reflect" retaliatory motive.  Despite Sanders' interpretation, there is no evidence that Smith stated that defendant would not rehire plaintiff because of the potential lawsuit.  Sanders'

---

[79]"A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).  As defendant notes, the primary reason Smith provided that defendant did not rehire plaintiff was the fact that he was terminated under a last chance agreement.  It is undisputed that no similarly situated individual had been rehired by defendant.

[80]*Fye*, 516 F.3d at 1227 (quotation omitted).

[81](Doc. 33, Attach. 4 at 92–93.)

statement that Smith was told not to rehire plaintiff is purely speculative as Sanders admits that

he has no personal knowledge on the matter; therefore, that portion of the deposition testimony is

inadmissible evidence.[82]  Sanders' admissible testimony does not approximate the type of

evidence that has been held sufficient to satisfy a plaintiff's burden of directly showing

retaliatory motive in the Tenth Circuit.[83]  The Court finds that Sanders' testimony, absent the

inadmissible interpretation, is not sufficient to show retaliatory animus.

In conclusion, the Court grants defendant's motion for summary judgment because there

is no evidence that plaintiff engaged in protected opposition under the FMLA that gives rise to a

retaliation claim.  Even if he could establish that he engaged in protected activity, the Court finds

that plaintiff is unable to come forward with sufficient evidence of a retaliatory motive under a

mixed-motive theory of liability.

### B.     COBRA Claim

Pursuant to COBRA, employers must provide former employees the opportunity to elect

continuation coverage under a group health plan if a qualifying event occurs.[84]  Termination of

employment is a qualifying event.[85]  Once a qualifying event occurs, the employer must notify

---

[82]*See* Fed. R. Evid. 702.

[83]*See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999) (finding suspension letter in which employer admitted it was considering the plaintiff's deposition testimony about race discrimination in reaching its decision directly reflected an alleged retaliatory attitude); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1512 (10th Cir. 1997) (allowing mixed-motive instruction where decisionmakers expressly stated that plaintiff would not be considered for promotion due to a discrimination complaint ); *Kenworthy v. Conoco*, 979 F.2d 1462, 1471 n.5 (10th Cir. 1992) (finding mixed-motive theory applies where there was evidence that a supervisor misrepresented incidents involving the plaintiff, falsified and altered performance evaluations, and held the plaintiff's EEOC complaint against her).

[84]29 U.S.C. § 1161(a).

[85]*Id.* § 1163(2).

the plan administrator within thirty days of the date of the qualifying event and the administrator must then notify "any qualified beneficiary" of their COBRA rights.[86]  Notification must be made within fourteen days of the date on which the administrator is notified.[87]  In an action for benefits under COBRA, the plan administrator bears the burden of proving that adequate notice was given.[88]

The parties do not dispute that it was defendant's responsibility under COBRA to notify plaintiff, a qualified beneficiary, that his termination was a qualifying event that allowed him the right to continuation coverage.  The parties dispute whether defendant's notice was adequate because plaintiff did not receive it.

COBRA does not specify how notice must be given.  "[A] good faith attempt to comply with a reasonable interpretation of the statute is sufficient."[89]  Courts have found that employers' notice is sufficient when they send COBRA notices by first-class mail to an employee's last-known address.[90]  On August 26, 2005, Acclaim Benefits mailed plaintiff's COBRA election notice to him at an address on "SE Turman" in Topeka.  Plaintiff had previously submitted Employee Applications that listed his address on "SE Turman."   Plaintiff also testified in his deposition that this was his address.  He admits that it is possible that he received the COBRA

---

[86]*Id.* § 1166.

[87]*Id.*

[88]*See Daneshvar v. Graphic Tech., Inc.*, 40 F. Supp. 2d 1225, 1242 (D. Kan. 1998).

[89]*Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997) (quotations omitted).

[90]*See Torres-Negron v. Merck & Co.*, 488 F.3d 34, 45 (1st Cir. 2007) (citing *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 906 (W.D. Mich. 2002); *Torres-Negron v. Ramallo Bros. Printing, Inc.*, 203 F. Supp. 2d 120, 124–25 (D.P.R. 2002)).

notice, but he does not recall receiving it and testified it is just as possible that he never received it.  Plaintiff also points to the fact that his termination letter was sent to him on "SE Truman" as evidence that defendant had his correct address, and that a reasonable jury could find that the address on "SE Truman" was his last known address.

The Court finds that defendant has sustained its burden of showing no genuine issue of material fact on this issue.  Even though plaintiff's termination letter was sent to his address on SE Truman, defendant has pointed to an overwhelming amount of evidence that plaintiff himself provided an address on "SE Turman," on several forms and even in his own deposition testimony.  There is no evidence to suggest that defendant knowingly sent the COBRA notice to the wrong address—they sent it to the last known address that plaintiff had provided multiple times.  There is no genuine issue of material fact that defendant made a good faith attempt to comply with a reasonable interpretation of the statute, therefore summary judgment in favor of defendant is appropriate on this claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 29) is **granted in part and denied in part**.  The motion is denied on the FMLA interference claim and granted as to the FMLA retaliation and COBRA claims.

**IT IS SO ORDERED**.

Dated this 16th day of October 2008.

S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

29