ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAMONT AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-2380-JAR |
| ) | |
| JOSTENS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

On February 3, 2009, the jury returned a verdict in favor of plaintiff Lamont Austin on his interference claim under the Family and Medical Leave Act ("FMLA"), against his former employer, defendant Jostens, Inc. ("Jostens") and awarded plaintiff $42,000 in compensatory damages. In response to Question number 5: "Do you find that Jostens acted in good faith as defined in Instruction 17?", the jury checked "No." The Court now considers plaintiff's request for an additional award of liquidated damages, prejudgment interest, and equitable relief in the form of reinstatement or front pay. As described more fully below, the Court orders judgment in this case on the verdict and for an additional award of liquidated damages, prejudgment interest, and front pay.

## I.   Prejudgment Interest

Plaintiff requests prejudgment interest in the amount of .54% per annum. Plaintiff correctly notes that prejudgment interest on back pay is mandatory under the FMLA.[1] Plaintiff

---

[1] 29 U.S.C. § 2617(a)(1)(A)(ii); *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869 (8th Cir. 2006).

requests interest according to the "prevailing interest rate on federal judgments." The Court presumes this request is for the same rate as post-judgment interest set forth in 28 U.S.C. § 1961(a).[2] The Court grants plaintiff's request for prejudgment interest at the rate of interest published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment.[3] Pursuant to 28 U.S.C. § 1961(b), interest shall be computed daily to the date of payment and compounded annually.

## II.     Liquidated Damages

If an employer is found liable under the FMLA, it shall be liable for liquidated damages in an amount equal to back pay unless the employer proves that the violation was "in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title," in which case the Court may, in its discretion, reduce the amount of liability to back pay and interest.[4] "Adding such liquidated damages to the awards of back pay and prejudgment interest 'effectively doubles the size of the award.'"[5]

The Court is unable to conclude, given the jury verdict, that an award of liquidated damages is inappropriate here. The parties agreed to submit the question of good faith to the jury and the jury explicitly found that defendant did not act in good faith as defined in Instruction 17. Instruction 17 properly instructed the jury that it could find that defendant acted

---

[2]The FMLA does not indicate what rate of interest should be used as "the prevailing rate," and other courts have used a variety of sources for determining the appropriate interest rate to apply. *See Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 949 (S.D. Iowa 2005) (collecting cases), *aff'd* 446 F.3d 858 (8th Cir. 2006).

[3]*See* http://www.uscourts.gov/postjud/postjud.html.

[4]29 U.S.C. § 2617(a)(1)(A)(iii).

[5]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 964–66 (10th Cir. 2002) (quoting *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 925 n. 2 (5th Cir.1999)).

in good faith if it found by a preponderance of the evidence that "when Jostens terminated Austin, Jostens reasonably believed that its actions complied with the [FMLA]. Jostens has the burden of proving that it acted in good faith." To the extent that defendant now argues that the evidence was insufficient to support the jury's finding that it did not act in good faith, that is an argument for post-trial motions under Fed. R. Civ. P. 50. Given the jury's verdict, the Court finds an award of liquidated damages in the amount of $42,000 plus the amount of prejudgment interest set forth above shall be awarded to plaintiff in addition to the jury's back pay award of $42,000 and prejudgment interest.

### III.    Equitable Relief

Plaintiff requests reinstatement and front pay between the period of judgment and reinstatement. "'[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'"[6] Front pay is an equitable appropriate remedy under the FMLA.[7] Reinstatement is the preferred remedy, but it is not always a viable option.[8] The Tenth Circuit has explained that when "'reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement.'"[9] "In such cases an award of front pay as a substitute for reinstatement is "a necessary part of the 'make whole' relief mandated by

---

[6] *Abuan v. Level 3 Commcn's, Inc*. 353 F.3d 1158, 1176 (10th Cir. 2003) (quoting *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001)).

[7] *See Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 964 (10th Cir. 2002).

[8] *Abuan*, 353 F.3d at 1176.

[9] *Id.* (quoting *Pollard*, 532 U.S. at 846).

Congress. . . .'"[10]

### *Reinstatement*

As an initial matter, the Court must determine if reinstatement is viable in this matter. Defendant protests that reinstatement would be inappropriate due to plaintiff's continued attendance and performance problems and because the evidence at trial demonstrates that there could not be a "warm relationship" between plaintiff and defendant if he was reinstated. "Whether reinstatement or front pay is the appropriate remedy for employment discrimination is a matter committed to the discretion of the district court."[11] The Court may deny reinstatement "if the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible."[12]

While the Court makes no finding on defendant's contention that plaintiff would continue to exhibit attendance and performance problems if reinstated, it agrees that reinstatement is not feasible in this case given the animosity between the parties generated by this litigation. The evidence shows discord between the parties leading up to plaintiff's termination, as shown by the last chance agreement. Moreover, Matt Beier, the Human Resources manager, testified that the company has been affected by the recent economic downturn and has laid off employees this year. He testified that Jostens has changed printing presses since the time plaintiff was employed there; the new presses require less manpower. As a result, the job of press operator at Jostens has been reduced; less senior press operators have been either moved to press helper

---

[10] *Id.* (quoting *Pollard*, 532 U.S. at 850).

[11] *Id.*

[12] *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 638 (10th Cir. 1989).

positions, experienced shorter "seasons" and some have not returned. Under all of these circumstances, the Court is unable to find reinstatement to be a viable option.

### *Front Pay*

Calculation of front pay is to be determined by the Court.[13] The parties presented evidence to the Court outside the presence of the jury on the amount of front pay. The Court considers plaintiff's testimony, in conjunction with Exhibits 14, 17, and Beier's testimony. Additionally, the Court is cognizant that "when legal and equitable issues to be decided in the same case depend on common determinations of fact, such questions of fact are submitted to the jury, and the court in resolving the equitable issues is then bound by the jury's findings on them."[14]

Plaintiff must initially show the data necessary to calculate a reasonably certain front pay award: the amount of the proposed award, the length of time plaintiff expects to work for the defendant, and the applicable discount rate.[15] Here, plaintiff sets forth a calculation of front pay in Exhibit 17. For the period of February 2, 2009 through August 31, 2009, plaintiff requests $18,775.92.[16] For the period of September 1, 2009 through August 31, 2010, plaintiff requests $27,518.08.[17] For the period of September 1, 2010 through August 31, 2024, plaintiff requests

---

[13]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 964 (10th Cir. 2002).

[14]*Id.*

[15]*See, e.g.*, *Thorson v. Geminin, Inc.*, 96 F. Supp. 2d 882, 891 (N.D. Iowa 1999).

[16]Plaintiff calculated this sum by adding 1200 hours at his normal hourly rate of pay of $23.02 ($27,624.00), 136 hours at overtime pay ($4696.08), and his insurance benefits until June 2009 ($435.96), less 1200 hours at his new rate of pay of $12.74 per hour for 1200 hours ($15,288.00). *See* Ex. 14 (setting forth rate of pay).

[17]Plaintiff calculated this sum by adding 2080 hours at his normal hourly rate of pay of $23.65 ($49,192), and 136 hours at overtime pay ($4825.28), less his pay in his current job at $12.74 per hour for 2080 hours ($26,499). *See* Ex. 14 (setting forth rate of pay).

$385,253.12.[18]  Plaintiff's total front pay request is $431,547.12.

Defendant objects to any award of front pay based on its affirmative defense that plaintiff failed to mitigate his damages.  To the extent the Court allows for an award of front pay, defendants urge that the requested amount should be reduced based on plaintiff's work life expectancy with defendant and based on the application of a relevant discount rate.

Like a plaintiff seeking back pay, a plaintiff claiming front pay also has the duty to take reasonable steps to mitigate his damages.[19]  The Court finds that plaintiff is currently working in a job that pays less than he was making at Jostens[20] and that he will begin receiving insurance benefits from his current job as a corrections officer for Shawnee County in July 2009.  Therefore, "the burden shifts to the Defendant[] to show that []he has not exercised reasonable diligence in seeking to mitigate damages."[21]  To do this, defendant "must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment."[22]  To avoid a reduction in the requested front pay, plaintiff still has a duty to mitigate "to the greatest extent reasonably possible by seeking comparable employment."[23]

In support of its contention that plaintiff has failed to mitigate damages, defendant points

---

[18]This amount is based on an assumed retirement at age sixty—fourteen years at an annual front pay award of $27,518.08.

[19]*See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990); *Hughes v. Regents of Univ. of Colo.*, 967 F. Supp. 431, 439 (D. Colo. 1996).

[20]Plaintiff testified at trial that his job with Shawnee County pays $12.74 per hour; at Jostens plaintiff would be making $23.02 per hour under the collective bargaining agreement.  *See* Ex. 14.

[21]*Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 949 (S.D. Iowa 2005) (citing *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989)), *aff'd* 446 F.3d 858 (8th Cir. 2006).

[22]*Id.*

[23]*Id.*

$385,253.12.[18]  Plaintiff's total front pay request is $431,547.12.

Defendant objects to any award of front pay based on its affirmative defense that plaintiff failed to mitigate his damages.  To the extent the Court allows for an award of front pay, defendants urge that the requested amount should be reduced based on plaintiff's work life expectancy with defendant and based on the application of a relevant discount rate.

Like a plaintiff seeking back pay, a plaintiff claiming front pay also has the duty to take reasonable steps to mitigate his damages.[19]  The Court finds that plaintiff is currently working in a job that pays less than he was making at Jostens[20] and that he will begin receiving insurance benefits from his current job as a corrections officer for Shawnee County in July 2009.  Therefore, "the burden shifts to the Defendant[] to show that []he has not exercised reasonable diligence in seeking to mitigate damages."[21]  To do this, defendant "must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment."[22]  To avoid a reduction in the requested front pay, plaintiff still has a duty to mitigate "to the greatest extent reasonably possible by seeking comparable employment."[23]

In support of its contention that plaintiff has failed to mitigate damages, defendant points

---

[18]This amount is based on an assumed retirement at age sixty—fourteen years at an annual front pay award of $27,518.08.

[19]*See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990); *Hughes v. Regents of Univ. of Colo.*, 967 F. Supp. 431, 439 (D. Colo. 1996).

[20]Plaintiff testified at trial that his job with Shawnee County pays $12.74 per hour; at Jostens plaintiff would be making $23.02 per hour under the collective bargaining agreement.  *See* Ex. 14.

[21]*Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 949 (S.D. Iowa 2005) (citing *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989)), *aff'd* 446 F.3d 858 (8th Cir. 2006).

[22]*Id.*

[23]*Id.*

to plaintiff's testimony that he only applied to five or six positions during the entire three year period between his termination and employment with Shawnee County. Defendant urges that it was unreasonable for plaintiff to limit his job search to the Topeka, Kansas area and make no effort to obtain employment in the Lawrence or Kansas City areas. Defendant suggests that a one-hour commute is "typical for thousands of workers each day in the Kansas City metropolitan area." Defendant also points to evidence that plaintiff told his friends that he had retired from Jostens. Finally, defendants point to the jury's verdict that necessarily found that plaintiff failed to mitigate his damages by awarding him less than the requested amount of back pay.[24]

The Court cannot find that defendant has sustained its burden to show a wholesale failure to mitigate on plaintiff's part. Plaintiff testified that he is currently working for Shawnee County as a corrections officer, a job he applied for in August 2008. He testified that after his termination he hoped to stay in the printing business but that Topeka did not have many job openings in the printing industry compared to the Kansas City area, where there were more opportunities. This testimony is corroborated by Roger Sanders' testimony that there were few job opportunities in the printing industry in Topeka at a pay rate comparable to plaintiff's pay when employed by Jostens. Plaintiff sought employment with Mainline Printers, who was not hiring and testified that there were no other openings at printing businesses in Topeka. Plaintiff attempted to re-apply at Jostens, as well, in January 2007. Plaintiff testified that he worked a "few times" after his termination at Mid-America Aviation, making a total of about $800. Plaintiff testified that he did not apply for printing jobs outside of Topeka because he still had a child in school in Topeka and he hoped to stay close to him; he did not want to relocate to

---

[24]Plaintiff had requested a total back pay award of $186,711.22 (Ex. 15.)

Kansas City. He also testified that he did not have a car, so commuting to Kansas City was not practicable. The Court is unable to find, based on this evidence, that plaintiff's attempts to find comparable employment were so deficient as to constitute an unreasonable failure to seek employment. It is obvious that there were few opportunities in the printing industry in Topeka and that a commute to Kansas City was not possible for plaintiff given that he did not have a car. To the extent that the jury found plaintiff did not mitigate his damages, it only found a partial failure to mitigate, as evidenced by the back pay award of $42,000.

"In determining whether, and how much, front pay is appropriate, the district court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall."[25] The Court should consider the following relevant factors in assessing a front pay award: work life expectancy, salary and benefits at the time of termination, any potential increases in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which the plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value.[26]

The Court does find that certain factors weigh against an award of front pay as extensive as plaintiff seeks. First, there is no evidence that plaintiff would be unable to find comparable employment in the printing industry for the remainder of his work life expectancy.[27] While there is ample evidence that jobs in the Topeka printing market are sparse, there are other printing

---

[25]*Abuan v. Level 3 Commcn's, Inc*. 353 F.3d 1158, 1176 (10th Cir. 2003).

[26]*McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1145–46 (10th Cir. 2006); *Davoll v. Webb*, 194 F.3d 1116, 1143–44 (10th Cir. 1999).

[27]*See, e.g.*, *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1145–46 (10th Cir. 2006) (considering testimony from vocational expert that the plaintiff has no prospects of attaining a pay level equivalent to the pay she received prior to termination).

business in Topeka, as plaintiff testified, and plaintiff's experience certainly would qualify him for a comparable position in the industry.  Also, the front pay calculation presented by plaintiff fails to account for any raises or promotions he would obtain in his current employment as a corrections officer.  While the front pay award did not assume future pay increases at Jostens after 2010, plaintiff testified that his pay scale would go up if he stayed in his current position as a corrections officer and that he anticipated opportunities for promotions over the coming years.  Plaintiff failed to present the Court with the data necessary to calculate a front pay award beyond August 31, 2010.  While he takes into account his pay increase at Jostens beginning in September 2009, he does not provide information on his pay scale at Shawnee County.

The Court finds that a more reasonable front pay award, taking into account the necessary factors, should be limited to the period ending August 31, 2010.  This amount of time sufficiently allows plaintiff to obtain a position that pays comparably to his job at Jostens when added to the period from August 2005 until trial.  This period of time allows plaintiff approximately five years to look for comparable employment in the Topeka printing industry, or to gain the necessary seniority in his career as a corrections officer.[28]  Plaintiff was terminated in August 2005 and it took him three years to obtain his current position, although, he had primarily focused on finding only comparable printing industry employment for much of that three year period.  The difference in pay is almost half as much as what plaintiff would be making at Jostens based on his seniority under the Collective Bargaining Agreement.  But given his extensive work history at Jostens before his termination and the fact that he has approximately fifteen years of work life expectancy, the Court finds that five years would be a sufficient period

---

[28]"The number of suitable jobs which a plaintiff could be expected to locate would likely increase as the temporal length of the job search increases." *Excel Corp. v. Bosley*, 165 F.3d 635, 640 (8th Cir.1999).

of time to close the gap between his current salary and a salary similar to what he was making at Jostens. Awarding front pay for the entire fifteen year period requested by plaintiff, based only on his testimony that he intended to stay employed by Jostens until he retired at age sixty, would simply be too speculative.[29]

Given that the Court must consider evidence of "the individualized circumstances of both the employee and employer,"[30] the Court also considers Beier's testimony that Jostens has recently laid off press operators and that due to a change in the type of presses used by Jostens, there are fewer press operators needed than at the time of plaintiff's employment. There was no conclusive evidence presented by either party about whether plaintiff had enough seniority to survive these layoffs. The Court finds that a front pay award through August 31, 2010 will make plaintiff whole without granting him a windfall.

Moreover, the Court is unable to conclude that an award of front pay should assume that plaintiff would be paid mandatory overtime. Beier testified that this year, Jostens would not necessarily be following the same mandatory overtime policies that plaintiff had experienced prior to his termination, upon which his overtime pay estimate was based. Beier testified that to the extent there is some mandatory "sixth day" of overtime, it would be based on seniority. There was no evidence presented to the Court about whether plaintiff would be eligible for this mandatory overtime based on his projected seniority if he had not been terminated. There is likewise no evidence to support plaintiff's assertion that any employees would earn overtime pay

---

[29]*See Peyton v. DiMario*, 287 F.3d 1121, 1128–29 (D.C. Cir. 2002) (denying award of front pay for entire period until retirement when based on employee's subjective intent alone to remain at job until retirement); *see also Stafford v. Elec. Data Sys. Corp.*, 749 F. Supp. 781, 789 (citing cases and noting that other courts agree that "plaintiffs in their forties are too young for lifetime front pay awards.") .

[30]*Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1001 (10th Cir. 2005).

during the months of June and July. Finally, the Court finds that the front pay award must be adjusted to net present value though the application of a discount rate and will apply defendant's suggested conservative discount rate of 5%.[31]

Therefore, given the above findings, the Court concludes that a front pay award is appropriate for a period ending August 31, 2010, based only on plaintiff's calculated regular rate of pay at Jostens during regular workweeks, plus the cost of insurance benefits from the date of judgment until July 2009 (three months), less his current rate of pay at Shawnee County, adjusted to net present value. The Court calculates this award as follows:

|  | Jostens Pay | + Benefits | - Shawnee County Pay | Total |
|---|---|---|---|---|
| 3/31/09 to 8/31/09 | $23.02 x 872 =$20,073.44 | $435.96 x 3 =$1307.88 | $12.74 x 872 =$11,109.28 | $10,272.04 |
| 9/1/09 to 8/31/09 | $23.65 x 2080 =$49,192 | 0 | $12.74 x 2080 =$26,499.20 | $22,692.80 |
| **Total**, adjusted to net present value (5%) |  |  |  | $32,964.84- (36,772.64 x .05)= **$31,316.16** |

**IT IS THEREFORE ORDERED** that judgment in favor of plaintiff on his FMLA interference claim be entered in this case as follows:

Back pay:             $42,000, plus prejudgment interest as set forth above

Liquidated Damages:   $42,000, plus prejudgment interest as set forth above

Front Pay:            $31,316.60

---

[31]*See, e.g.*, *Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, at *5 (N.D. Cal. Feb. 12, 2008) (applying discount rate of 4.65%).

**TOTAL:**               $111,316.60, plus two times the prejudgment interest rate set forth above

**SO ORDERED.**

Dated:  March 31, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE